**FILED**
IN THE UNITED STATES DISTRICT COURT UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO ALBUQUERQUE, NEW MEXICO

AUG 1 1 2005

UNITED STATES OF AMERICA,

    Plaintiff,

MATTHEW J. DYKMAN
CLERK

vs.                                    No.   CR 04-1345 MCA

**HENRY PETER WOODY, JR., and
LARRY WOODY,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States of America's *Motion in Limine and Notice of Intent to Use Rule 404(b) Evidence* [Doc. 72] ("the first *Motion*") and *Amended Motion in Limine and Notice of Intent to Use Rule 404(b) Evidence* [Doc. 75] ("the *Amended Motion*"), both filed July 26, 2005. The Court held a hearing on the *Amended Motion* on Thursday, August 4, 2005. In light of the arguments presented at the hearing, and having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies the first *Motion* as moot and denies the *Amended Motion*.

## I. BACKGROUND

On April 25, 2004, Henry Peter Woody, his brother Larry Woody, and Kenneth Tutt were drinking "ocean" (modified hairspray or mouthwash that is consumed for its alcoholic effect) in a vacant lot in Shiprock, NM. Sometime that evening, Tutt was stabbed to death. The Woodys were both questioned by FBI Special Agent William Hall II. On April 28,



2004, Larry told Special Agent Hall that he was present when Henry stabbed Tutt over an argument about money. During his interview with Special Agent Hall on May 10, 2004, Henry maintained that Larry had stabbed Tutt and that he, Henry, had witnessed the event. In a May 10, 2004 re-interview, Larry again told Special Agent Hall that Henry killed Tutt. During this second interview, Larry stated that his cousin, Paul Hayes, Jr., was with Larry, Henry, and Tutt for at least part of the evening of April 25, 2004. Another witness, Nelvis Dawes, told FBI agents that he saw "four or five Navajo men pushing, hitting, and kicking another Navajo man." [Doc. 66 at 2]. Henry and Larry Woody are currently charged with second degree murder and with aiding and abetting in connection with Tutt's death. [Doc. 37, "Second Redacted Superseding Indictment"].

The government, pursuant to Fed.R.Evid. 404(b), now moves for the admission of evidence of other crimes, wrongs, or acts committed by Larry Woody. [Doc. 75]. Specifically, the government seeks to present to the jury Larry's convictions for assault in the first degree with a deadly weapon (knife) and assault in the first degree (serious injury). The government submits that on September 1, 2000, Larry approached a man named Terry Hutchins in a park in Cortez, Colorado. Hutchins, who was intoxicated, was sitting at a picnic table with five other individuals when he got into an argument with Larry, who also was intoxicated. A witness, Sandra Root, saw Larry pull a knife, get Hutchins down, and attempt to cut him about the throat. Root heard Larry say, "I just got out of prison, I can kill someone." Larry cut Hutchins in his left shoulder, right cheek, and left side of the throat.

2

The government moves to admit this evidence as probative of Larry's intent, identity, and absence of mistake or accident. According to the government, the facts surrounding the Cortez incident and the charged act in the instant case are substantially similar because, in both, Larry (1) was intoxicated; (2) attacked the victim in a public, open area; (3) stabbed the victim in the left side of the neck-throat area; (4) preceded the stabbing by arguing with the victim and forcing him to the ground; and (5) chose unarmed victims. [Id.].

**II. ANALYSIS**

Rule 404(b) provides, in pertinent part, that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed.R.Evid. 404(b). To determine the admissibility of evidence offered for one of the reasons set forth un 404(b), the Tenth Circuit looks to the four-part test set out by the United States Supreme Court in <u>Huddleston v. United States</u>, 485 U.S. 681, 691-92 (1988). That test requires that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed.R.Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

3

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000). Before evidence of prior similar acts may be admitted, the government first bears the burden of demonstrating how the proffered evidence is relevant to an issue in the case. United States v. Biswell, 700 F.2d 1310, 1317 (10th Cir.1983). In demonstrating the relevance of such evidence, "[t]he Government must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts." United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir.1985). Moreover, "[t]here must be a clear and logical connection between the alleged earlier offense or misconduct and the case being tried." Biswell, 700 F.2d at 1317-18.

As stated above, one purpose for which the government seeks to introduce Larry's prior criminal convictions is to show identity. While identity is a proper purpose under the test set forth in Huddleston and reiterated in Zamora, I conclude that the Cortez argument and stabbing are not legally relevant inasmuch as the Cortez incident and the charged incident do not share sufficient elements to constitute the "signature quality" that the Tenth Circuit requires. Even assuming the relevance of the Cortez incident, I conclude that its potential prejudicial value substantially outweighs its probative value.

In United States v. Shumway, the Tenth Circuit discussed when prior acts are relevant for purposes of showing identity. United States v. Shumway, 112 F.3d 1413, 1419-21 (10th Cir. 1997). The Court began its analysis by explaining that "to prove identity, evidence of prior illegal acts need not be identical to the crime charged, so long as, based on a 'totality

4

of the comparison,' the acts share enough elements to constitute a 'signature quality.'" Id. at 1420 (*quoting* United States v. Patterson, 20 F.3d 809, 813 (10th Cir.), *cert. denied*, 513 U.S. 841 (1994). Some elements relevant to a "signature quality" include geographic location, the skill necessary to commit the acts, and the use of a distinctive device. Id. The Court went on to state that these elements are not inclusive, and that the weight to be given to any one element is highly dependent on the elements' uniqueness in the context of the particular case. "In other words, a few highly unique factors may constitute a 'signature,' while a number of lesser unique factors 'although insufficient to generate a strong inference of identity if considered separately, may be of significant probative value when considered together.'" Id. (*quoting* United States v. Myers, 550 F.2d 1036, 1045 (5th Cir.1977).

In Shumway, Earl Shumway was charged with, among other things, violating the Archaeological Resources Protection Act by engaging in the unauthorized excavation of two Anasazi archaeological sites: Dop-Ki Cave and Horse Rock Ruin. Shumway's defense was that he was not the person who committed the offenses. The district court admitted under 404(b) and for purposes of proving identity (as well as knowledge and intent) evidence that Shumway had previously engaged in the unauthorized excavation of Horse Rock Ruin. The jury returned a guilty verdict. Shumway, 112 F.3d at 1418. Affirming the district court's admission of evidence of Shumway's prior acts, the Tenth Circuit held that Shumway's "signature quality" was apparent from the unique geographical location of the charged and the earlier acts, as well as from the skill and specialized knowledge necessary to commit

5

both acts. Id. at 1420. The Court explained:

> The existence of 22,000 sites in San Juan County alone, the remoteness of the location, the difficulty of access, and the varying concentration of artifacts, all suggest the person who committed both the prior act and the charged acts was one possessing distinctive, unique and unusual skills necessary to locate and excavate the artifacts. Extensive testimony was introduced showing that Mr. Shumway's statements and actions demonstrated substantial specialized knowledge and prior visits to the site. [Helicopter pilot] Mr. Miller testified Mr. Shumway had detailed knowledge as to how to get to the site and had a high degree of familiarity with the Horse Rock Ruin site. Particularly, Mr. Miller testified Mr. Shumway knew precisely where at the Horse Rock Ruin site to find artifacts. The prior acts evidence Mr. Shumway had looted the Horse Rock Ruin site once before therefore is probative to show he was one with specialized skill and knowledge sufficient to commit the acts charged. The fact Mr. Shumway not only looted before, but looted the Horse Rock Ruin once before, shows he had knowledge of the site's location and means of access, as well as the artifacts to be found there.
>
> Therefore, we hold the two features shared by the prior and charged acts-- location and skill--are sufficient under the circumstances of this case to constitute a "signature quality" such that commission of the prior act was relevant to show identity.

Id. at 1421.

By contrast, no such "signature quality" appears in Larry Woody's case. First, the geographic locations are completely different. The Cortez incident occurred in a park in Cortez, Colorado, while the charged act occurred in on the reservation in a vacant lot behind a market in Shiprock, New Mexico. [See Doc. 66, "Defendants' Response to Motion to Sever" at 1]. While both victims were taken to the ground and stabbed, such action requires

6

no special skill[1] beyond, possibly, possessing greater strength than the victim. A special skill for purposes of proving a "signature quality" would be an expertise in locating, accessing, and looting a specific archaeological site, Shumway, 112 F.3d at 1421; the ability to bypass a burglar alarm, United States v. Barrett, 539 F.2d 244, 248 (1st Cir. 1976); or the skillful forging of documents, United States v. Garcia, 880 F.2d 1277, 1278 (11th Cir. 1989). With respect to the third enumerated element of "signature quality," a knife is hardly a distinctive device to use during a stabbing. While Shumway's elements of a "signature quality" are not inclusive and a number of lesser unique factors that would appear insufficient separately might be of significant probative value when considered together, in this case there simply are no unique factors.[2] If anything, both incidents stand out for their genericness and predictability that, when drunken armed men argue, one is likely to be wounded or killed. Because the Cortez stabbing does not demonstrate a "signature quality," evidence of it is not likely to prove identity and, therefore, cannot be deemed legally relevant.

Even assuming the legal relevance of the Cortez incident for the purpose of

---

[1] At the hearing on this matter, the attorney for the government acknowledged as much, stating that, while it is pertinent to the issue of diminished inhibition to commit such an act, "stabbing somebody while you're intoxicated and all parties are intoxicated obviously does not require a tremendous amount of skill." [Aug.4, 2005 Hearing].

[2] This case is similar to Myers, in which the Fifth Circuit held erroneous the district court's admission of a Pennsylvania bank robbery to prove that the defendant had committed an earlier bank robbery in Florida. Holding that the probative value of the evidence of the Pennsylvania robbery did not outweigh its substantial prejudice, the Court stated that even "[w]hen [the similarities between the two robberies] are considered as a whole, the combination still lacks distinction." Myers, 550 F.2d at 1046.

7

identifying Larry as the individual who stabbed Kenneth Tutt, I conclude that this evidence must nevertheless be excluded under the third prong of Huddleston inasmuch as its probative value is substantially outweighed by its potential for unfair prejudice. See Huddleston, 485 U.S. at 691-92. Because evidence of the Cortez incident does not reveal a "signature quality" and therefore is not admissible to establish identity, I determine that its introduction is most likely to cause the jury to believe that because Larry Woody stabbed Terry Hutchins, he must also have stabbed Kenneth Tutt, which is precisely what Rule 404(b) prohibits. See, e.g., United States v. Gorman, 312 F.3d 1159, 1162 (10th Cir. 2002) ("Rule 404(b) forbids the use of other bad acts to prove the character of the defendant and to show the defendant acted in conformity with his character.").

The Government also seeks to introduce evidence of the Cortez incident to prove intent and absence of mistake or accident. Rule 404(b) allows for the introduction of evidence of prior acts for purposes of proving intent and absence of mistake. See Fed.R.Evid. 404(b). Such evidence, however, usually is admitted for these purposes when the defendant has raised a defense of accident. For example, evidence of the defendant's prior batteries of his late wife was admissible to rebut defendant's argument that his fatal shooting of his wife was an accident. United States v. Naranjo, 710 F.2d 1465 (10th Cir. 1983). Similarly, evidence that the defendant had previously abused his son was admissible to rebut the defendant's argument that the child's death was an accident. United States v. Harris, 661 F.2d 138, 142 (10th Cir. 1981). In both cases, the earlier incidents were

8

admissible because "[e]vidence of the systematic abuse of a particular victim tends to negate the defense of accident because it shows that the defendant had strong feelings toward a particular individual that may have contributed to the formation of intent or motive." United States v. Hogue, 827 F.2d 660, 664 (10th Cir. 1987) (attached).

In Larry Woody's case, however, evidence of the assault and stabbing of Terry Hutchins in Cortez would appear to have no bearing "on the question of whether the stabbing of a different victim . . . was accidental or intentional." Hogue, 827 F.2d at 664. Accordingly, I conclude that evidence of the Cortez incident is not legally relevant for purposes of showing Larry Woody's intent or absence of mistake or accident in the Kenneth Tutt stabbing. I also conclude that the government has neither articulated precisely the evidentiary hypothesis by which Larry Woody's intent or absence of mistake in allegedly stabbing Kenneth Tutt may be inferred from the evidence of his actions with respect to Terry Hutchins, see United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir.1985), nor established a clear and logical connection between the Cortez incident and the charged act, See Biswell, 700 F.2d at 1317-18, other than the impermissible nexus that because Larry Woody acted unlawfully in Cortez he must have acted unlawfully with respect to Kenneth Tutt. [See Aug. 4, 2005 Hearing].

Even assuming the legal relevance of the Cortez incident for the purpose of showing Larry Woody's intent or absence of mistake, I determine that evidence of that incident must

9

be excluded under Rule 403.[3]

At the hearing on this matter, the government stated that it would call as witnesses Terry Hutchins and/or Sergeant Rex Brinkerhoff of the Cortez Police Department to testify as to what occurred between Hutchins and Larry Woody. In this regard, the Court further notes that evidence may be excluded under Rule 403 if its admission is likely to "cause undue delay or lead to collateral mini trials." United States v. Talamante, 981 F.2d 1153, 1157 n.5 (10th Cir. 1992). I conclude that introduction of the Cortez incident through testimony of Terry Hutchins and/or Sergeant Brinkerhoff is more likely than not to lead to a mini trial with respect to what happened between Terry Hutchins and Larry Woody that day in Colorado. The jury would be confused. Accordingly, I conclude that evidence of the Cortez incident must be excluded.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that evidence of Larry Woody's prior criminal act in Cortez, Colorado are inadmissible for the purposes for which the government has offered it here. Accordingly, the government's *Amended Motion in Limine and Notice of Intent to Use Rule 404(b) Evidence* is denied, subject to reconsideration.

**IT IS, THEREFORE, ORDERED** that the government's *Amended Motion in Limine and Notice of Intent to Use Rule 404(b) Evidence* [Doc. 75] is DENIED;

---

[3] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

**IT IS FURTHER ORDERED** that the government's *Motion in Limine and Notice of Intent to Use Rule 404(b) Evidence* [Doc. 72] is DENIED as moot.

**SO ORDERED** this 11th day of August, 2005, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge
